This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37843**

**STATE OF NEW MEXICO,**

　　　　Plaintiff-Appellee,

v.

**JOHNATHAN BROWNELL,**

　　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Jonathan Brownell appeals his convictions, following a jury trial, for great bodily harm by reckless driving, contrary to NMSA 1978, Section 66-8-101 (2016); knowingly leaving the scene of an accident resulting in great bodily harm, contrary to NMSA 1978, Section 66-7-201(A) and (C) (1989); aggravated fleeing of a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003); and receiving or transferring a stolen vehicle, contrary to NMSA 1978, Section 30-16D-4(A) (2009).

Defendant alleges that the district court erred by allowing the State to cross-examine him regarding his drug use on the day of the collision and that this erroneous admission was unfairly prejudicial. Finding no error, we affirm.

**BACKGROUND**

**{2}** Given that the parties are familiar with the facts and details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts "may dispose of a case by non-precedential order, decision or memorandum opinion" under certain circumstances); *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties[, and s]ince the parties know the detail of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}** Defendant was driving a truck that had been reported stolen when two Bernalillo County Sheriff's Office deputies began following him. Deputy Quackenbush, one of the deputies following Defendant, deployed a "Star Chase" adhesive GPS tracking device from the front of her vehicle towards the truck, but the device missed. She did not turn on her emergency lights or sirens before deploying the tracking device. According to Deputy Quackenbush, this tracking device makes a sound similar to gunfire when deployed. Defendant testified that he believed one of the deputies' vehicles was ramming the rear bumper of the truck.

**{4}** It is uncontested that while being pursued by the deputies, Defendant failed to stop at a stop sign and collided with a motorcyclist in the intersection, causing severe injuries to the motorcyclist. However, Defendant and Deputy Quackenbush gave different accounts of the circumstances of the collision. Defendant testified that he was braking as he approached the intersection and a patrol vehicle pushed his truck into the intersection where he collided with the motorcyclist. Contrary to Defendant's testimony, Deputy Quackenbush testified that she slowed down as she approached the busy intersection and saw Defendant drive at a high speed into the intersection and collide with the motorcyclist. Deputy Quackenbush testified that she did not lose sight of the truck at any point. When asked whether a patrol vehicle ever "rammed" Defendant's truck, Deputy Quackenbush responded that she was not aware of any such collision. After Defendant hit the motorcyclist, he continued to drive at a high speed while fleeing law enforcement until his truck became disabled in heavy sand.

**{5}** Defendant was charged with great bodily harm by driving under the influence, great bodily harm by reckless driving, aggravated fleeing of a law enforcement officer, knowingly leaving the scene of an accident resulting in great bodily harm, leaving the scene of an accident resulting in great bodily harm, and receiving or transferring a stolen vehicle. The State later dismissed the charge for great bodily harm by driving under the influence.

**{6}**     Defense counsel learned that Defendant admitted to deputies that he smoked methamphetamine five hours before the collision after obtaining the police reports before trial. Defendant filed a motion in limine to exclude his statements about drug use on the grounds that such statements were irrelevant and prejudicial. Before the district court ruled on the motion in limine, however, Defendant's statements were suppressed as a sanction for the State's late disclosure of the belt tapes that recorded these statements.

**{7}**     At the close of the State's case, defense counsel stated Defendant would likely testify. The State immediately raised the issue of impeaching Defendant with his previously suppressed statements. In the interest of fairness, the district court gave the parties a portion of an afternoon and the following morning to review the statements at issue and prepare their arguments regarding whether these statements were admissible for impeachment.

**{8}**     The next day, the State argued that if Defendant chose to testify, his statements about drug use on the day of the collision would be relevant to both his perception and credibility as a witness. Defendant argued that his statements were irrelevant and that the prejudice of admitting these statements far outweighed their probative value. After listening to the belt tapes and hearing arguments from the parties, the district court found that Defendant's statements were voluntarily made, were relevant to Defendant's credibility as a witness, and would therefore be admissible for impeachment purposes. The district court further found that the probative value of the evidence outweighed its prejudice. Seeking to further minimize any prejudice, the district court required the State to refer to methamphetamine only as a "stimulant drug."

**{9}**     Defendant raised the defense of duress at trial and the jury was so instructed. In support of this defense, Defendant testified that a patrol vehicle pushed him into the intersection where he collided with the motorcyclist and stated that he continued driving after the collision because he was scared of a patrol vehicle hitting him again. During cross-examination, the State elicited testimony from Defendant about his use of the "stimulant drug" five hours before the collision. Defendant described feeling energetic and nervous as an effect of the drug. Defendant stated that he felt these effects of the drug for approximately an hour after taking it and that his judgment was not affected when later driving. Neither the State nor Defendant characterized the "stimulant drug" as a legal or illegal drug. The jury convicted Defendant of all charges.[1]

## DISCUSSION

**{10}**     Defendant argues that he was unfairly prejudiced by the district court's admission of evidence of his drug use for impeachment purposes. Specifically, Defendant claims that: (1) drug use was not within the scope of cross-examination; (2) the evidence constitutes bad acts evidence prohibited under Rule 11-404(B) NMRA; (3) the evidence unfairly prejudiced Defendant; (4) the State lacked foundation to ask Defendant about

---

[1]For sentencing, Defendant's conviction for leaving the scene of an accident merged with the conviction for knowingly leaving the scene of an accident.

his drug use; (5) the evidence was not relevant to the defense of duress; and (6) erroneous admission of this evidence was not harmless. Because we hold that it was not error to admit Defendant's statements as evidence of his credibility on cross-examination, we do not reach a harmless error analysis. Additionally, because the evidence was properly admitted for cross-examination purposes, we do not address Defendant's argument regarding the relevance of drug use to his duress defense.

**Standard of Review**

**{11}** "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**I.      Cross-Examination of Defendant Regarding His Drug Use Was Appropriate**

**{12}** Defendant argues that because he did not discuss drug use during direct examination, he did not open the door to impeachment by his prior statements admitting to drug use on the day of the collision. The State argues that Defendant's possibly altered perceptions were appropriate grounds for cross-examination because his ability to perceive the events related to his credibility as a witness.

**{13}** Under Rule 11-611 NMRA, cross-examination of a witness is limited to "the subject matter of the direct examination and matters affecting a witness's credibility." *Id.* "[W]hen a defendant testifies, he is subject, within the limits of certain rules, to cross-examination the same as any other witness." *State v. Gutierrez*, 2003-NMCA-077, ¶ 13, 133 N.M. 797, 70 P.3d 787. "It is well settled that in cross-examination, [f]or the purpose of testing the credibility of a witness, it is permissible to investigate . . . [the witness's] powers of discernment, memory, and description." *State v. Bent*, 2013-NMCA-108, ¶ 10, 328 P.3d 677 (internal quotation marks and citation omitted); *see also* Kenneth S. Broun et al., *McCormick on Evidence*, § 44 (8th ed. 2020) ("If the witness was under the influence [of drugs or alcohol] at the time of the events which he testifies to[,] . . . the witness's condition is provable to impeach on cross or by extrinsic evidence.").

**{14}** Because Defendant chose to testify, the State was entitled to cross-examine him on matters of direct examination and matters affecting his credibility. Rule 11-611. Moreover, the State was allowed to test Defendant's credibility by questions directed to his "powers of discernment, memory, and description" at the time of the collision. *Bent*, 2013-NMCA-108, ¶ 10 (internal quotation marks and citation omitted). The district court reasoned that "perception at the time of the incident can be altered by drugs or alcohol" and noted that the pertinent jury instruction directs the jury to consider a witness's "ability to observe" when judging the credibility of a witness. *See* UJI 14-5020 (instructing the jury as "the judges of the credibility of the witnesses[,]" to "take into

account the witness's . . . ability and opportunity to observe, . . . considered in the light of all the evidence in the case"). The district court's application of the well-recognized principle that drug use may alter a person's perception as a basis for admitting Defendant's statement was not "clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). All considered, we see no abuse of discretion in the district court's decision to admit Defendant's statements for impeachment.

## II. Defendant's Testimony Was Not Prohibited Character Evidence

**{15}** Defendant next argues that his drug use before the collision was prior bad act evidence prohibited under Rule 11-404(B). Assuming without deciding that use of an unnamed "stimulant drug" qualifies as a prior bad act, we disagree.

**{16}** Under this rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2) This list of admissible purposes "is not exhaustive and evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *State v. Otto*, 2007-NMSC-012, ¶ 10, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citations omitted). "Evidence that reflects on a witness'[s] credibility is relevant." *State v. Johnson*, 2010-NMSC-016, ¶ 41, 148 N.M. 50, 229 P.3d 523.

**{17}** As discussed above, we agree with the district court's finding that evidence of Defendant's drug use on the day of the collision was relevant to his credibility as a witness. Evidence of prior bad acts "may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *Otto*, 2007-NMSC-012, ¶ 10 (internal quotation marks and citations omitted). The record demonstrates that the evidence was admitted for the limited purpose to challenge Defendant's perception and credibility as a witness, not as prohibited character evidence. Because Defendant's statements about drug use were properly admitted as relevant evidence of witness credibility, we conclude the district court did not err in determining that these statements were admissible under Rule 11-404(B).

## III. Defendant's Testimony Was Not Unfairly Prejudicial

**{18}** Defendant claims that he was unfairly prejudiced by the admission of evidence of his drug use before the collision. Additionally, Defendant claims he was prejudiced by the mid-trial timing of the admission because the district court initially suppressed the statements as a pretrial discovery sanction. Although Defendant does not specifically cite to Rule 11-403 NMRA, the nature of his argument suggests that it is premised on the district court's application of this rule to the statements at issue.

**{19}** Otherwise admissible evidence may be excluded if the probative value is substantially outweighed by a danger of unfair prejudice. Rule 11-403. "Because a determination of unfair prejudice is fact sensitive, much leeway is given [to] trial judges who must fairly weigh probative value against probable dangers." *Otto*, 2007-NMSC-012, ¶ 14 (internal quotation marks and citation omitted). "Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." *Rojo*, 1999-NMSC-001, ¶ 48, (alteration, internal quotation marks, and citations omitted). Moreover, "the fact that some jurors might find this evidence offensive or inflammatory does not necessarily require its exclusion[.]" *Id.*

**{20}** Witness credibility was pivotal at trial, particularly regarding Defendant's collision with the motorcyclist. Defendant testified that he was *pushed* by a patrol vehicle into the intersection where he collided with the motorcyclist, whereas Deputy Quackenbush testified that she saw Defendant *drive* into the intersection at a high rate of speed. Defendant's credibility and his ability to perceive events leading to the collision and shortly thereafter were central issues for the jury to decide. After listening to the belt tapes and considering the parties' arguments, the district court found that the evidence of drug use was prejudicial, but concluded that the probative value of the evidence outweighed its prejudice. The district court minimized this prejudice by requiring the State to refer to methamphetamine only as a "stimulant drug." Considering the probative value of evidence that Defendant's perceptions on the day of the collision were possibly altered by drug use, it was reasonable for the district court to conclude that admission of these statements was not unfairly prejudicial. We agree that the evidence was relevant, its probative value substantially outweighed the danger of unfair prejudice, and admission of this evidence for impeachment purposes was not an abuse of discretion under Rule 11-403.

**{21}** To the extent Defendant argues that the *timing* of the admission of this previously suppressed evidence was unfairly prejudicial, we disagree. Defendant asserts that the "late admission of the testimony prejudiced the defense, who found themselves without an effective means to rebut it because they had relied on the district court's previous suppression order." Defendant does not provide this Court with anything beyond the above statement to demonstrate how the timing of admission was unfairly prejudicial. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("[A]rgument of counsel is not evidence." (internal quotation marks and citation omitted)). The district court's original suppression of the statements as a discovery sanction occurred in a pretrial hearing held on the day of trial, and Defendant does not explain how his trial strategy relied on the suppression order. Further, in the interest of fairness, the district court allowed defense counsel part of an afternoon and part of the following morning to prepare arguments on the issue of admissibility of Defendant's statements for impeachment purposes. Considering defense counsel was on notice of Defendant's statements, the additional time allowed mid-trial for parties to prepare arguments, and the substantial importance of Defendant's credibility, we hold that it was not an abuse of discretion for the district court to admit the evidence mid-trial for impeachment.

**IV.     No Foundational Evidence Was Necessary Before Defendant Could be Questioned About His Drug Use**

**{22}**     Lastly, we turn to Defendant's contention that "[w]ithout an expert witness to establish the identity and effect of the 'stimulant drug,' the State lacked foundation to ask [Defendant] whether he had used it and what effects it had on him." Defendant makes no further argument and provides no authority on this point. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (noting that appellate courts will assume no authority exists when none is cited in support of an issue).  To the extent that Defendant can be understood to argue that the State was required to provide expert testimony to establish the identity of the drug Defendant admitted using and the effect this particular drug has when ingested before Defendant could testify regarding his own perception of the drug's effects at the time of the collision, we disagree.

**{23}**     The issue here was not whether Defendant was legally under the influence of a particular drug, but rather whether his own perception of the collision was credible. It is axiomatic that a witness may testify to matters of which the witness has personal knowledge. *See* Rule 11-602 NMRA. Certainly, Defendant had personal knowledge of his drug use before the collision and the effect, if any, his drug use had on his perception of events. Defendant fails to explain why his own drug use and the effects he experienced would require foundational testimony from an expert witness. Given Defendant's failure to develop this argument, we will not consider this argument further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{24}**     For the foregoing reasons, we affirm.

**{25}     IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**